UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CITY OF WARWICK<br>    Plaintiff<br><br>v.<br><br>LABORERS' INTERNATIONAL<br>UNION OF NORTH AMERICA<br>NATIONAL (INDUSTRIAL) PENSION FUND<br>    Defendant | CA 08 366 ML<br><br>Civil Action No. _____<br><br>DEMAND FOR TRIAL BY JURY |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COMES plaintiff, the City of Warwick, Rhode Island ("Warwick"), to respectfully request, in accordance with 28 U.S.C. §2201 (declaratory relief) and 28 U.S.C. §2202 (further relief based thereon) a declaration that: (1) it is not an "employer" as defined by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.* ("ERISA"); (2) it is not an employer in an industry affecting commerce within the meaning of Labor Management Relations Act ("LMRA"), 29 U.S.C. §152(2); (3) its collective bargaining agreements with city employee crossing guards established a governmental plan for defined contributions exempt from ERISA regulation; (4) application of withdrawal liability to it under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §1381 *et seq.* ("MPPAA"), would violate the United States Constitution, including but not limited to the Tenth Amendment; and (5) it is not subject to withdrawal liability under MPPAA for any one or more of the foregoing reasons. Warwick also respectfully requests that the Laborers' International Union of North America National (Industrial) Pension Fund ("Fund") be preliminarily and permanently enjoined from

1

enforcing, by collection or otherwise, any part or whole of any alleged withdrawal liability assessed or to be assessed against Warwick.

OR IN THE ALTERNATIVE, Warwick respectfully requests, in accordance with 28 U.S.C. §§2201 and 2202, a declaration that Warwick has not completely withdrawn from the Fund under MPPAA, 29 U.S.C. §1383, because contributions have been suspended during a labor dispute involving its employees. Warwick also respectfully requests that the Fund be preliminarily and permanently enjoined from enforcing by collection or otherwise any part or whole of any alleged withdrawal liability assessed or to be assessed against Warwick during the pendency of such labor dispute.

## JURISDICTION

1. This Court has original jurisdiction over this action under 28 U.S.C. §1331, typically referred to as "federal question jurisdiction," because resolution will require statutory interpretation of ERISA, a federal statutory scheme.

## VENUE

2. Venue is proper in the District of Rhode Island under 28 U.S.C. §1391(b), because (1) the Fund is within the definition of "corporation" under 28 U.S.C. §1391(c), is an entity presently subject to personal jurisdiction in Rhode Island, and is therefore residing in Rhode Island; and (2) a substantial part of the events or omissions giving rise to this action occurred, and a substantial part of property that is the subject of this action is situated, in Rhode Island.

## PARTIES

3. Warwick is a body corporate and politic, within the County of Kent, State of Rhode Island and Providence Plantations, the inhabitants of which in their collective capacity are endowed with the right to exercise a part of the sovereign power of the State of Rhode Island and

Providence Plantations. Warwick is not a for-profit or private business organization, but is rather incorporated solely as a political subdivision of the State of Rhode Island and Providence Plantations, and is a governmental entity.

4. The Fund, of 905 16th Street, NW, Washington, D.C., 20006, is an employee pension benefit provider founded by the Laborers' International Union of North America ("LIUNA") and certain employers of LIUNA members. The Fund holds itself out as an employee pension benefit plan and an employee benefit plan within the meaning of ERISA, 29 U.S.C. §§1002(2) and (3), and a multiemployer plan within the meaning of ERISA, 29 U.S.C. §§1002(37). The Fund holds itself out as a joint labor-management trust fund established and maintained pursuant to collective bargaining agreements in accordance with the LMRA, 29 U.S.C. §186(c)(5). The Fund holds itself out as subject to suit as an independent legal entity under ERISA, 29 U.S.C. §1132(d)(1).

## STATEMENT OF FACTS

5. Warwick executed and entered into a series of written collective bargaining agreements with the Rhode Island Laborers' District Council, on behalf of Public Employees' Local Union 1033, of LIUNA, generally designed to act as employee and labor organizations within the meaning of ERISA, 29 U.S.C. §1002(4), and LMRA, 29 U.S.C. §152(5), on behalf of crossing guards employed by Warwick, though not acting as such in relation to Warwick.

6. Beginning in 1983, each succeeding collective bargaining agreement established a defined contribution which Warwick agreed to maintain to the Fund for the term of the agreement in order to provide retirement benefits based solely upon the amount contributed to employees covered by the collective bargaining agreement. See, e.g., **Exhibit A** at Article XII, pp. 11-12.

7. Warwick exists pursuant to the Constitution of the State of Rhode Island and Providence Plantations, and pursuant to a Home Rule Charter.

8. There is, and at all times pertinent hereto has been a mayor elected by the citizens of Warwick who is responsible for negotiating labor contracts with unions representing municipal employees of Warwick.

9. There is, and at all times pertinent hereto has been an elected city council, vested with legislative responsibility for Warwick. The Warwick City Council is responsible for approving all contracts with municipal labor unions, and all contracts are not effective without approval of the Warwick City Council.

10. Warwick has the power to tax.

11. Crossing guard salaries and contributions to the Fund were paid from the Warwick finances, which is and has been funded in vast majority by the taxation of Warwick's inhabitants.

12. Warwick's relations with its crossing guards are purely intrastate activities not affecting interstate commerce, or even commerce within the State of Rhode Island and Providence Plantations, or Warwick itself.

13. Employment of crossing guards is a public health, safety and welfare measure implemented in furtherance of Warwick's and the State of Rhode Island and Providence Plantations' core interest in protecting its citizens, including the school children of Warwick.

14. The Fund purports to enforce federal regulation against Warwick's finances.

15. The Fund purports to apply federal regulation to local public health, safety and welfare matters that are indisputable attributes of sovereignty by design and history.

16. Warwick's compliance with ERISA and MPPAA would directly impair its ability to structure integral public health, safety and welfare operations, a traditional area of core local governmental function.

17. In its relations with its crossing guards, Warwick was not engaged in commerce, nor a proprietary function. ERISA and MPPAA were premised on the federal authority to regulate commerce.

18. Warwick is expressly or impliedly exempt from several related obligations imposed by Congress under the Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3, e.g. the Federal Power Act, the National Labor Relations Act, the Labor-Management Reporting and Disclosure Act, the Occupational Safety and Health Act, the Employee Retirement Income Security Act, and the Sherman Act. The consistency of these schemes evidences a pattern of exemption for political subdivisions that extends to MPPAA withdrawal liability.

19. Federal regulation of Warwick is in no case permissible except as to matters in the United States Constitution specifically authorized or delegated to the United States. Any interference, except as thus permitted, is an invasion of the authority of Warwick and the sovereignty of the State of Rhode Island and Providence Plantations, and to that extent a denial of state independence.

20. Application of MPPAA withdrawal liability to Warwick and its relationship to the crossing guards, where there has been no other federal intervention or assistance, will handicap Warwick's public health, safety and welfare functions without countervailing justification.

21. Warwick has no record showing it executed or entered into or adopted the Fund's "Agreement and Declaration of Trust" ("Trust Agreement"), nor in any other manner agreed to

be bound by the provisions of said Trust Agreement or any amendment thereto, and therefore believes that it did not execute or enter into or adopt the Trust Agreement, nor in any other manner agree to be bound by the provisions of said Trust Agreement or any amendment thereto.

22. Warwick never designated, and has no record of ever being given the opportunity to designate employer representative members of the Fund's Board of Trustees.

23. The Fund has failed to deliver to Warwick disclosures required by ERISA and accompanying regulations, including but not limited to 29 C.F.R. §2520.101-1 *et seq.*, and other disclosures such as the Fund's rules and plan documents and amendments thereto, or reports and analyses.

24. In April 2007 Warwick and the crossing guards through their representative began to negotiate a new collective bargaining agreement, as the then-existing contract was due to expire on June 30, 2007.

25. Warwick and the crossing guards through their representative continued to abide by all the terms of the last collective bargaining agreement after it expired on June 30, 2007, including the provisions governing pension contributions while negotiations continued. Warwick administration and the crossing guards through their representative reached a tentative agreement on a new collective bargaining agreement in November 2007. This agreement could only become binding by approval of the Warwick City Council.

26. After the Warwick City Council voted not to ratify the tentative agreement in November 2007, Warwick contracted for crossing guard services on a per diem basis.

27. As there was no longer a collective bargaining agreement in place, and Warwick had contracted out the work, no pension payments were made for the period after February 15, 2008.

28. The crossing guards through their representative filed charges with the Rhode Island State Labor Relations Board, asserting that Warwick unlawfully contracted out crossing guard work and insisting that all crossing guards be reinstated to their prior positions with full back pay and benefits. The Rhode Island State Labor Relations Board has issued a complaint against Warwick on these charges. This labor dispute is presently ongoing.

29. By letter dated June 27, 2008 the Fund notified Warwick that it had allegedly completely withdrawn from the Fund under 29 U.S.C. §1383, and that on account thereof the Fund was assessing Warwick an alleged withdrawal liability under MPPAA in the amount of $198,444.00. See **Exhibit B**. This withdrawal liability is based on the Fund's general liabilities to all its participants, and is not a reflection of any failure by Warwick to fully pay all that it contracted to pay to the Fund on behalf of its employees.

30. The June 27, 2008 letter was received by Warwick on July 1, 2008.

31. In the June 27, 2008 letter, the Fund provided a schedule of payments to begin on July 31, 2008, calling for $9,769.00 per quarter for twenty-four (24) quarters, and a final payment of $1,962.00, and setting forth twenty-four (24) separate due dates, for a total of $236,418.00.

32. By letter dated September 26, 2008, and in accordance with 29 U.S.C. §1399(b)(2)(A), Warwick contested the Fund's assessment of withdrawal liability on numerous grounds, requested review of the alleged withdrawal liability on numerous grounds, and requested information from the Fund. See **Exhibit C**.

33. Warwick has not made the first quarterly payment, purportedly due on July 31, 2008.

34. The Fund, through its attorney, has threatened to accelerate Warwick's alleged obligations under 29 U.S.C. §1399(c)(5) despite Warwick's proper and timely contest and request for review, and has also threatened to subject Warwick to suit under 29 U.S.C.

§1399(c)(2) to collect withdrawal liability payments allegedly past due, plus interest, costs, and attorneys' fees. See **Exhibit D**.

35. Warwick is likely to succeed on the merits of this matter.

36. The Fund threatens Warwick with the irreparable harm of expending public funds without cause or justification, for which there is no adequate remedy at law.

37. The balance of equities favors granting the injunction in this case.

38. The public's interest is served by granting Warwick a preliminary injunction because it preserves judicial resources by putting into an efficient order the issues for resolution.

### DECLARATORY AND INJUNCTIVE RELIEF REQUESTED

**WHEREFORE**, Warwick respectfully requests that this Court enter an order:

A. Declaring that Warwick is a political subdivision, not an "employer" within the meaning of ERISA, 29 U.S.C. §§1002(5), or MPPAA, and therefore is not an entity against which withdrawal liability can be assessed under MPAA;

B. Declaring that Warwick is not an employer in an industry affecting commerce within the meaning of LMRA, 29 U.S.C. §152(2), and therefore is not an entity against which withdrawal liability can be assessed under MPPAA;

C. Declaring that Warwick established and maintained a defined contribution plan by successive written agreements and therefore is not subject to withdrawal liability under MPAA;

D. Declaring that Warwick's defined contribution plan is excepted from ERISA and MPPAA withdrawal liability as a "governmental plan" under ERISA, 29 U.S.C. §1002(32);

E. Declaring that MPAA withdrawal liability cannot be assessed against Warwick as a governmental entity, and employer of only governmental employees;

F.  Declaring that application of MPPAA withdrawal liability to Warwick under the circumstances presented would violate the United States Constitution, including but not limited to the Tenth Amendment;

G.  Declaring that Warwick is not subject to MPPAA withdrawal liability;

H.  Preliminarily and permanently enjoining the Fund from enforcing, by collection or otherwise, any part or whole of any alleged withdrawal liability assessed or to be assessed against Warwick.

I.  Awarding Warwick its attorneys' fees, and reasonable expenses and costs incurred in connection with seeking relief through this action; and

J.  Such other relief as this Honorable Court deems just and proper.

**OR IN THE ALTERNATIVE:**

K.  Declaring that under ERISA, 29 U.S.C. §1398(2), Warwick has not withdrawn from the Fund because it has merely suspended contributions during a labor dispute involving its employees;

L.  Preliminarily and permanently enjoining the Fund from enforcing, by collection or otherwise, any part or whole of any alleged withdrawal liability assessed or to be assessed against Warwick during the pendency of such labor dispute;

M.  Awarding Warwick its attorneys' fees, and reasonable expenses and costs incurred in connection with seeking relief through this action; and

N.  Such other relief as this Honorable Court deems just and proper.

## JURY DEMAND

Warwick hereby makes demand for trial by jury and designates Diana E. Pearson as lead counsel.

>                              Respectfully submitted,
>                              **CITY OF WARWICK**
>
>                       By: _/s/ Diana E. Pearson_
>                              Diana E. Pearson   (#3061)
>                              Assistant City Solicitor
>                              1050 Main Street, #2
>                              P.O. Box 178
>                              East Greenwich, RI 02818
>                              V: 401-886-1114
>                              F: 401-886-1118
>                              Diana@dpearsonlaw.com

October 3, 2008